IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SHERRY CRUZ, BRITTANY WILKINS and ALICIA MITCHELL, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| | Case No. 3:21-cv-3135 |
| Plaintiffs, | ) ) Judge Richard Mills |
| v. | ) ) Magistrate Judge Tom Schanzle-Haskins |
| EYEBUYDIRECT, INC., | ) ) |
| Defendant. | ) ) |

**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**

**INTRODUCTION**

Defendant EyeBuyDirect, Inc. ("EBD" or "defendant") moves to dismiss plaintiffs' First Amended Class Action Complaint ("Amended Complaint") with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs allege that EBD uses an "online" "Virtual Try-On" tool to sell prescription and non-prescription eyeglasses that violates the Biometric Information Privacy Act ("BIPA") by collecting a scan of their facial geometry without their informed consent and by failing to have a publicly available data retention and destruction policy.

The Amended Complaint should be dismissed because plaintiffs' BIPA claims are barred by either or both prongs of BIPA's health care exemption. 740 ILCS 14/10. Prescription and non-prescription eyewear are Class I medical devices. 21 C.F.R. §§886.5842, 886.5844. A nearly identical case held that defendant collected biometric information from "a patient in a health care setting" under Section 10 because it offers a "Virtual Try-On" of the Class I medical devices it sells, which "facilitates this health care service by … measuring an individual's face to ensure the appropriate fit of corrective eyewear and confirm the eyeglasses are properly positioned over a

patient's eyes." *See Vo v. VSP Retail Development Holding, Inc.*, 2020 WL 1445605, *2 (N.D. Ill. March 25, 2020). It did not matter that plaintiffs claimed they were interested only in non-prescription eyewear and purchased nothing. The *Vo* court held that defendant provided a health care service that "affects the function of the body – namely vision" and met the first prong of BIPA's health care exemption.

The second prong of Section 10 also supports dismissal. It authorizes a health care provider such as EBD to collect, use or store biometric identifiers for the purposes of "health care treatment, payment, or [business] operations under the federal Health Insurance Portability and Accountability Act of 1996" ("HIPAA"). Here, EBD allegedly collects scans of facial geometry to provide health care (vision) products to its customers and "offer[] a service … that affects the function of the body – namely vision." *Vo*, 2020 WL 1445605, *2. Prescription eyeglasses correct and improve vision but even non-prescription sunglasses protect the eyes from overexposure to the sun and facilitate vision in bright, sunlit conditions. Thus, the alleged collection of plaintiffs' biometric identifier by EBD's Virtual Try-On is plainly information collected, used, or stored for health care treatment, payment or operations under HIPAA and falls squarely within the second prong of BIPA's health care exemption.

Plaintiffs' BIPA claims are also preempted by HIPAA, Pub. L. No. 104-191, 110 Stat. 1936 *et seq.*, which regulates the collection and protection of individual health information by health care providers. 45 C.F.R. ¶164.306. When a HIPAA-covered entity such as EBD allegedly collects biometric identifiers in the context of its operations through the Virtual Try-On, such information is considered Protected Health Information ("PHI") subject to HIPAA's extensive safeguards. 45 C.F.R. ¶164.508(a)(1). Thus, HIPAA subsumes BIPA because it provides better protection for

2

biometric data than BIPA, assuming EBD collected biometric identifiers as the Amended Complaint alleges.

At the very least, the Amended Complaint's threadbare recitals are insufficient to establish a plausible BIPA violation under *Iqbal* and *Twombly*. Accordingly, this Court should dismiss the Amended Complaint with prejudice.

## PROCEDURAL HISTORY

Plaintiff Sherry Cruz ("Cruz") filed a two-count BIPA putative class action against EBD in the Circuit Court of Sangamon County, Illinois on April 19, 2021. Plaintiff served the Summons and Complaint on EBD on May 19, 2021, although EBD waived service of process on May 18, 2021. On June 17, 2021, EBD timely removed this lawsuit to the U.S. District Court for the Central District of Illinois. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332(d), which is the jurisdictional grant created by the Class Action Fairness Act of 2005 ("CAFA").

This Court gave plaintiff a deadline of July 17, 2021, to object to removal and file a motion to remand. The July 17 deadline passed, and plaintiff filed no motion to remand.

On July 26, 2021, defendant filed its Rule 12(b)(6) Motion to Dismiss. Cruz's deadline to file her response was August 9, 2021. Instead of filing a response, on August 16, 2021, Cruz filed an Amended Complaint, which added Brittany Wilkins ("Wilkins") and Alicia Mitchell ("Mitchell") as plaintiffs.

## NATURE OF THE BIPA CLAIMS

EBD "sells various eyeglasses and optical wear online" at "https://eyebuydirect.com...." (ECF 7, ¶¶9-10.) Plaintiffs "used" EBD's "Virtual Try-On" which allegedly "functions by collecting, capturing, and using facial biometrics." (*Id.* ¶30.) The Virtual Try-On uses a "camera" to "scan[] a potential customer's face, identifies the potential customers' [sic] facial geometry, and then allows

3

that potential customer to 'try on' hundreds or thousands of various eyeglass frames on the potential customers' [sic] face as shown in the picture on the device." (*Id.* ¶13.) The Virtual Try-On is not a substitute for an eyeglass prescription from an ophthalmologist or optometrist: "After 'trying on' the frames, if the consumer chooses to purchase the frames they must still input their specific information to ensure they fit their face." (*Id.* ¶14.)

"Upon information and belief, Defendant subsequently stored Plaintiffs' biometric data in its database(s)." (*Id.* ¶31.) The Virtual Try-On of eyeglasses purportedly "exposes … Plaintiffs to serious and irreversible privacy risks." (*Id.* ¶15.) Plaintiffs "have **no** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information." (*Id.* ¶16) (emphasis in the original). No facts are alleged to support plaintiffs' purported "information and belief" about EBD's supposed maintenance of a database that stores biometric data, nor does the Amended Complaint explain whether or how plaintiffs' identities were ever recorded by EBD, so that use of the Virtual Try-On could be somehow associated with plaintiffs' identities.

The Amended Complaint further alleges that Cruz obtained "her first prescription, in 2020" and "look[ed] at reading glasses, but did not enter her prescription or PD [pupillary distance] into Defendant's website." (*Id.* ¶28.) Although EBD sells prescription eyeglasses and sunglasses, Wilkins and Mitchell only "brows[ed] … non-prescription sunglasses." (*Id.* ¶29.) Plaintiffs "did not purchase any of the products Defendant sells." (*Id.* ¶29.)

4

Section 15(b) of BIPA governs the collection of biometric identifiers [1] and biometric information. [2] It requires private entities to first comply with BIPA's notice and consent requirements before they collect an individual's biometric identifier or information:

> (b)  No private entity may collect, capture, purchase, receive through trade or otherwise obtain a person's or a customer's biometric identifier or biometric information, *unless it first*:
>
> > (1)  informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;
> >
> > (2)  informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
> >
> > (3)  receives a written release executed by the subject of the biometric identifier or biometric information….

740 ILCS 14/15(b); *see also* ECF 7, ¶51.

BIPA excludes from the definition of biometric identifier "photographs," "information captured from a patient in a health care setting," and "information collected, used, or stored for health care treatment, payment or operations under" HIPAA:

> Biometric identifiers do not include writing samples, written signatures, photographs.... Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996.

740 ILCS 14/10.

---

[1] "Biometric identifiers" are defined to include a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *See* 740 ILCS 14/10; *see also* ECF 7, ¶45.

[2] "Biometric information" means "any information … based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers." *See* 740 ILCS 14/10; *see also* ECF 7, ¶46.

5

Likewise, BIPA excludes from the definition of biometric information "information derived from items or procedures excluded under the definition of biometric identifiers." 740 ILCS 14/10.

**IQBAL/TWOMBLY STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint's factual allegations must establish a plausible right to relief. They must be sufficient to "raise a right to relief above the speculative level." *Twombly* at 555.

The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal* at 678. "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* When discovery is likely to be more than unusually costly – as with a class action, the complaint must include as much factual detail as may be required to show that plaintiffs have plausible claims. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). The purpose of the plausibility requirement is to avoid the "in terrorem" effect of allowing plaintiffs with a "largely groundless claim" to "force defendants into either costly discovery or an increased settlement value." *Id.*

**ARGUMENT**

A.     **BIPA's Health Care Exemption Bars Plaintiffs' Claims.**

The threshold issue in this case is whether the biometric identifiers or biometric information "at issue fall within BIPA's health care exemption." *Vo*, 2020 WL 1445605, *2. To fall within the exemption, the collected biometric information need only: "(1) be obtained from a patient in a health care setting; or (2) be collected, used, or stored in connection with health care treatment, payment, or operations under HIPAA." *Id.* at *2.

### 1. The first prong of BIPA's health care exemption is met.

Applying the first prong of BIPA's health care exemption, HIPAA broadly defines "health care" to include any service, assessment, or procedure that affects the function of the body, or any sale of a device in accordance with a prescription:

> *Health care* means care, services, or supplies related to the health of an individual. *Health care* includes, but is not limited, to the following:
>
> (1) Preventative, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body; and
>
> (2) Sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription.

45 C.F.R. §160.103.

Here, the Amended Complaint alleges that EBD "sells various eyeglasses and optical wear online," which includes prescription and non-prescription eyeglasses. (ECF 7, ¶9.) Prescription and non-prescription eyewear are both Class I medical devices under federal regulations. 21 C.F.R. §§886.5842, 886.5844. Thus, EBD provides "health care" or operates in a "health care setting" by selling Class I medical "device[s] … in accordance with a prescription." 45 C.F.R. §160.103.

The Amended Complaint further alleges that EBD offers a Virtual Try-On of its eyeglasses – whether prescription or non-prescription eyewear. (ECF 7, ¶¶9, 10, 13.) The Virtual Try-On of Class I medical devices constitutes a "service, assessment, or procedure" that either relates to an individual's "functional status" or "affects the … function of the body" – namely, his or her vision. 45 C.F.R. §160.103.

Like the plaintiff in *Vo*, it does not matter that plaintiffs did not consider themselves "patients" while interacting with EBD and using its Virtual Try-On. EBD "provides health care by selling a device or equipment in accordance with a prescription – namely eyewear – and by offering

7

a service or procedure that affects the function of the body – namely vision." *Vo*, 2020 WL 1445605, *2. As Judge Kocoras explained in *Vo*, the Virtual Try-On "facilitates this health care service by … measuring an individual's face to ensure the appropriate fit of corrective eyewear and confirm the eyeglasses are properly positioned over a patient's eyes. In obtaining Vo's facial geometry to accomplish these objectives, VSP's Virtual Try-On software collected biometric information from a patient in a health care setting." *Id*.

It makes no difference that plaintiffs amended their complaint to focus on non-prescription sunglasssses, never entered their prescriptions into EBD's website, contend the Virtual Try-On is not a "complete physical assessment" and made no purchases. (ECF 7, ¶¶14, 28-29.) These same arguments were rejected by Judge Kocoras in *Vo,* who explained that the Virtual Try-On does not take the place of an eye exam or prescription but nonetheless provides a health care service:

> However, this assertion [that plaintiff was not a patient in a health care setting] is unavailing for two reasons. First, as noted above, the Virtual Try-On software provides a health care service by ensuring the appropriate fit and positioning of corrective eyewear. Therefore, Vo did receive a health care service from VSP. Second, even if Vo did not proceed past the Virtual Try-On software to the eye exam and prescription stage, the initial evaluation of a prospective patient still constitutes a health care service. 45 C.F.R. §160.103 (defining "health care" to include "assessment with respect to the physical or mental condition … of an individual or that affects the structure or function of the body"). An individual cannot escape BIPA's health care exemption simply by choosing to forego the health care service for which they were evaluated.

*Id.* at *2, citing 45 C.F.R. §160.103.

Plainly, the Virtual Try-On does not take the place of an ophthalmologist's or optometrist's eye exam and prescription, which is a more complete physical assessment of the patient-consumer. But that does not change or diminish the fact that EBD provides a health care service. EBD sells Class I medical devices, offers a Virtual Try-On that gives individuals the opportunity to try on these Class I medical devices, and "facilitates this health care service by … measuring an

individual's face to … confirm the eyeglasses are properly positioned over a patient's eyes." Accordingly, plaintiffs' BIPA claims should be dismissed because they fall within the first prong of BIPA's health care exemption.

### 2. In the alternative, the second prong of BIPA's health care exemption is met.

The second prong of BIPA's health care exemption also applies – the alleged biometric identifier is "collected, used, or stored in connection with health care treatment, payment, or operations under HIPAA." HIPAA defines "treatment" to include "the provision, coordination, or management of health care and related services by one or more health care providers…." 45 C.F.R. §164.501. HIPAA defines a "health care provider" to include any "organization who furnishes, bills, or is paid for health care in the normal course of business." 45 C.F.R. §160.103.

As explained by the *Vo* court, the "Virtual Try-On software provides a health care service." 2020 WL 1445605, *2. EBD further provides its Virtual Try-On services in the normal, ordinary course of its business.

Accordingly, whether plaintiffs or other consumers visit EBD's website to purchase prescription or non-prescription eyewear,[3] EBD allegedly collects biometric identifiers in an effort to provide health care (vision) products to its customers and "offer[] a service … that affects the function of the body – namely vision." *Vo* at *2. This would be true even for non-prescription glasses such as sunglasses, which protect the eyes from overexposure to the sun and make vision possible in bright, sunlit conditions, such as while driving or engaging in other outdoor activities.

Thus, the alleged capture of plaintiffs' biometric identifiers by the Virtual Try-On tool is information collected, used, or stored for health care treatment, payment or operations under

---

[3] Non-prescription eyewear is treated as a therapeutic ophthalmic device by the U.S. Food and Drug Administration. *See* 21 C.F.R. §886.5850.

9

HIPAA. 740 ILCS 14/10. Accordingly, plaintiffs' BIPA claims fall squarely within the second prong of BIPA's health care exemption and should be dismissed. *Id.*

### B.     Plaintiffs' BIPA Claims Are Preempted By HIPAA.

#### 1.     EBD is a HIPAA-covered entity.

HIPAA defines a "covered entity" to include a "health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." *See* 45 C.F.R. § 160.103. "*Transaction* means the transmission of information between two parties to carry out financial or administrative activities related to health care." *Id.*

EBD is an online eyewear retailer that sells eyeglasses, which include prescription and non-prescription eyewear. (*See* ECF 7, ¶9.) Cruz alleges that "after being issued her first prescription in 2020," she "did look at reading glasses" but ultimately decided not to "enter her prescription or PD [pupillary distance] into Defendant's website." (*Id.* ¶28.) Thus, plaintiff plainly understood that she would be transmitting her eyeglass prescription to EBD had she ordered prescription reading glasses. Accordingly, EBD is a "covered entity" – a health care provider who may receive health care information such as eyeglass prescriptions in electronic form from a prospective customer (such as one shopping for "reading glasses" like Cruz) in connection with the production, sale and delivery of Class I medical devices. 45 C.F.R. § 160.103.

#### 2.     HIPAA fully occupies the field of health-related biometric privacy.

HIPAA's preemption of BIPA under these circumstances is straightforward. HIPAA preempts any contrary state law and, even if not contrary, state laws that are less stringent than HIPAA. *See* 45 C.F.R. 160.203(b). HIPAA defines PHI to include both "biometric identifiers" and "full face photographic images and any comparable images." 45 C.F.R. §164.514(b)(2)(i)(P)-(Q). The U.S. Department of Health and Human Services has issued comprehensive HIPAA regulations covering the confidentiality and security of PHI (such as biometric identifiers and full face

10

photographic images) that are more stringent than BIPA. *See* 45 C.F.R. 160.203. Further, HIPAA provides unique protocols for the collection, use, and disclosure of PHI that are also more stringent than BIPA. *See, e.g.,* 45 C.F.R. §§164.306, 164.308, 164.310, 164.312, 164.314, 164.316, 164.502, 164.506, 164.508, 164.510, 164.512, 164.514.

These regulations do not merely "touch upon" the subject matter of BIPA. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). On the contrary, the federal regulations at issue here "substantially subsume the subject matter of the relevant state law," *see id*., and thus preempt BIPA.

BIPA even acknowledges the federal statute (HIPAA) to which it defers. Under BIPA, a "biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. However, expressly *excluded* from this definition is "information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal [HIPAA]." *Id*. Where a health care provider such as EBD collects alleged biometric identifiers or information for the purposes of health care treatment, payment, or operations such as providing products or services to patients, EBD cannot be held liable for a violation of BIPA based on the act of collecting such information. Because this is plaintiffs' exact theory of recovery, their Amended Complaint should be dismissed with prejudice under Rule 12(b)(6).[4]

    C.    **The Amended Complaint Fails To Allege Sufficient Facts To State Plausible BIPA Violations Under *Iqbal* and *Twombly*.**

Even if the Court finds that BIPA's health care exemption does not apply or that plaintiffs' claims are not preempted by HIPAA, the Amended Complaint lacks sufficient facts to state plausible BIPA claims under *Iqbal* and *Twombly*. The Amended Complaint pleads the legal conclusion that

---

[4] Although not addressing HIPAA, the Seventh Circuit has held that the federal Railway Labor Act preempts BIPA in the context of collective bargaining agreements. *See Miller v. Southwest Airlines Co.*, 926 F.3d 898, 903-04 (7th Cir. 2019).

11

EBD's Virtual Try-On "collect[s], captur[es], and us[es] facial biometrics" in violation of BIPA. (ECF 7, ¶30.) It alleges only that the Virtual Try-On uses some "camera" to scan their "facial geometry." (*Id.* ¶13.) It fails to clarify that plaintiffs use their own devices' live camera to see what EBD's glasses look like in real-time, mirror-like fashion – on their own devices.

The Amended Complaint further alleges on "information and belief" that EBD "stored Plaintiffs' biometric data in its database(s)." (*Id.* ¶31.) It pleads no facts to show what "information" grounds this purported "belief." The Amended Complaint never pleads that EBD has a biometric database that registers users of the Virtual Try-On, stores their facial geometry scans in this database, or subsequently uses the stored face scans to identify them – unlike the allegations in BIPA lawsuits involving biometric timeclocks with finger scanners. As users of the Virtual Try-On software, plaintiffs necessarily knew they had the ability to set up an EBD account and that there was no place in an EBD account to register (and store) their live camera feed under their name. As a live camera feed, the image of the face with eyeglasses exists only in the moment when plaintiffs' camera is on. It is no different than using a mirror.

The Amended Complaint then alleges the highly-speculative legal conclusion that the Virtual Try-On of eyeglasses "exposes … Plaintiffs to serious and irreversible privacy risks" and they had "no means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information." (*Id.* ¶¶15-16.)

Plaintiffs' threadbare allegation of "information and belief" is precisely the type of speculation that *Iqbal* and *Twombly* intended to prevent – especially with the *in terrorem* effects caused by extremely costly class actions, as here. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916-17 (7th Cir. 2013) (affirming dismissal under Rule 12(b)(6) because the "complaint lacks the factual specificity required to state a plausible" Section 301 claim under *Iqbal*/*Twombly;* "bare assertions"

pled "on information and belief" must be "supported with subsidiary facts" but "factual detail in support of this otherwise conclusory allegation is entirely missing").

Without some basic facts to support these unfounded accusations that EBD's website contains a database of stored <u>and</u> identifiable biometric information that may cause plaintiffs irreversible harm, the Amended Complaint does not pass muster under Rule 12(b)(6) and must be dismissed. No facts are pled that plaintiffs set up an EBD account that somehow gave them the ability to store live camera footage (showing the eyeglasses on their face) and register the live feed to their name. It is simply implausible and highly reckless for plaintiffs to speculate that this "health care service" exposed them to "identity theft" when plaintiffs briefly used live camera feed on their own phones with no allegation that they registered their names or stored their live feed under their names on EBD's site.

## CONCLUSION

Section 10's definition of "biometric identifier" specifically excludes "photographs," "information captured from a patient in a health care setting," and "information collected, used, or stored for health care treatment, payment, or operations under [HIPAA]." Section 10's definition of "biometric information" further excludes "information derived from items … excluded under the definition of biometric identifiers." 740 ILCS 14/10.

A sister court has already addressed this very fact pattern and held that the "Virtual Try-On software provides a health care service" exempted by BIPA's health care exemption. *Vo*, 2020 WL 1445605 at *2-3. And even putting aside the health care exemption's plain application to this case, plaintiffs' bare-bones allegations and legal conclusions are wholly insufficient to plead an actionable BIPA violation.

For all these reasons, the Court should dismiss the Amended Complaint with prejudice under Rule 12(b)(6) because BIPA's health care exemption bars plaintiffs' BIPA claims and

13

because plaintiffs' claims are also preempted by HIPAA. In the unlikely event these legal arguments fail, the Amended Complaint should be dismissed because it fails to allege sufficient facts to state a plausible BIPA violation under *Iqbal* and *Twombly*.

Dated:   August 30, 2021                                         Respectfully submitted,

                                          By:   /s/ Anne E. Larson
                                                 One of the Attorneys for Defendant
                                                 EyeBuyDirect, Inc.

Anne E. Larson (ARDC No. 6200481)
**OGLETREE, DEAKINS, NASH,**
  **SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone:   312.558.1220
Facsimile:   312.807.3619
*anne.larson@ogletree.com*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on August 30, 2021, she filed the foregoing ***Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint and Supporting Memorandum*** electronically with the Clerk of Court using the ECF system, and served it on the following via electronic mail:

> Brandon M. Wise
> Peiffer Wolf Carr Kane & Conway, LLP
> 818 Lafayette Ave., Floor 2
> St. Louis, MO 63104
> *bwise@peifferwolf.com*
>
> Aaron Siri
> Mason Barney
> Siri & Glimstad LLP
> 200 Park Avenue, 17th Floor
> New York, NY 10166
> *aaron@sirillp.com*
> *mbarney@sirillp.com*
>
> ***Attorneys for Plaintiff***

/s/ Anne E. Larson
One of the Attorneys for Defendant

48266499